UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMAR STOCKMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-173** |
| **JASON KENT, WARDEN** | **SECTION: "I"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Jamar Stockman, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. On September 10, 2013, he was convicted of possession of hydrocodone and possession of cocaine under Louisiana law.[1] On November 19, 2013, he was sentenced on each conviction a term of five years imprisonment, and it was ordered that those sentences be served consecutively.[2] On July 30, 2014, the Louisiana Fifth Circuit Court of Appeal

---

[1] State Rec., Vol. 3 of 4, transcript of September 10, 2013, p. 200; State Rec., Vol. 1 of 4, minute entry dated September 10, 2013.
[2] State Rec., Vol. 3 of 4, transcript of November 19, 2013.

affirmed those convictions and sentences.[3] The Louisiana Supreme Court then denied his related writ application on April 2, 2015.[4]

In the interim, on December 12, 2013, petitioner pleaded guilty to being a fourth offender and was resentenced as such to a term of twenty years imprisonment.[5]

On or after June 9, 2015, petitioner filed an application for post-conviction relief with the state district court.[6] That application was denied on August 17, 2015.[7] His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on October 19, 2015,[8] and January 15, 2016,[9] and by the Louisiana Supreme Court on August 4, 2017.[10]

On December 19, 2017, petitioner filed the instant federal application seeking habeas corpus relief.[11] The state has filed a response conceding that the application is timely but arguing that petitioner's claim has no merit.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[3] State v. Stockman, 147 So. 3d 263 (La. App. 5th Cir. 2014); State Rec., Vol. 3 of 4.
[4] State v. Stockman, 163 So. 3d 792 (La. 2015); State Rec., Vol. 3 of 4.
[5] State Rec., Vol. 3 of 4, transcript of December 12, 2013; State Rec., Vol. 2 of 4, guilty plea form.
[6] State Rec., Vol. 3 of 4.
[7] State Rec., Vol. 4 of 4, Order dated August 17, 2015.
[8] State v. Stockman, No. 15-KH-630 (La. App. 5th Cir. Oct. 19, 2015); State Rec., Vol. 4 of 4.
[9] State v. Stockman, No. 15-KH-755 (La. App. 5th Cir. Jan. 15, 2016); State Rec., Vol. 4 of 4.
[10] State ex rel. Stockman v. State, 222 So. 3d 1262 (La. 2017); State Rec., Vol. 4 of 4.
[11] Rec. Doc. 3.
[12] Rec. Doc. 10.

state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>     If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> On October 19, 2012, Deputy Robert Calabresi and Detective Michael Wright of the St. Charles Parish Sheriff's Office drove to a residence located on Paul Fredericks Street in Luling, Louisiana, in an attempt to locate defendant

5

pursuant to an active arrest warrant. As they approached the location, they observed defendant by the open driver's side door of a white Cadillac that was backed into the driveway.[FN 4]  The officers drove slightly past the driveway, at which time they observed defendant make a "throwing motion" towards the interior of the vehicle and attempt to "duck" behind the driver's side door. According to Detective Wright, there was a female sitting in the driver's side seat when they passed by; however, when defendant kneeled down by the door and made "throwing movements" inside the vehicle, she "looked like she wanted to get away from him," so she quickly exited the vehicle, threw her hands up, and walked away.

> [FN 4]  Deputy Calabresi testified that upon their arrival, there were several people outside, some of whom were near the vehicle. However, defendant was the only person standing directly next to the driver's side door.

The officers then exited their unmarked unit, approached defendant, identified themselves as police officers, and placed defendant in handcuffs. While handcuffing defendant and advising him that he was under arrest, defendant spontaneously stated "I don't have any drugs." Deputy Calabresi looked into the vehicle but did not see any obvious contraband in plain view. Additionally, Detective Wright testified that while handcuffing defendant, he glanced into the vehicle and saw a "crumpled up" cigarette pack on the driver's side floorboard. The officers notified "case agent," Detective Danny April of the St. Charles Parish Sheriff's Office, of the arrest and held defendant until his arrival.

Detective Sergeant David Ehrmann, assistant commander of the special investigations division of the St. Charles Parish Sheriff's Office, arrived next. Detective Ehrmann testified that upon his arrival, defendant was in custody. Detective Ehrmann advised defendant of his rights per Miranda.[FN 5] Defendant stated that he understood his rights and admitted that he was hiding from the police because he was scared, and further admitted to throwing a cigarette pack, which he stated contained "crack and pills," inside the vehicle. Based on this information, the officers secured the vehicle and called for a canine unit. However, after conducting an "open-air sniff" around the exterior of the vehicle, the canine made no odor response. Detective April then entered the vehicle and seized a green cigarette pack located on the driver's side floorboard. Inside the cigarette pack were three off-white "rock-like objects" and prescription pills. Raven Barrois, forensic chemist for the Jefferson Parish Crime Laboratory, testified that he analyzed the evidence seized from the vehicle and that the substances tested positive for cocaine and hydrocodone.

> [FN 5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). [13]

---

[13] State v. Stockman, 147 So. 3d 263, 265-66 (La. App. 5th Cir. 2014); State Rec., Vol. 3 of 4.

### III.  Petitioner's Claim

Petitioner's sole claim in this proceeding is that he received ineffective assistance of counsel.  That claim was rejected by the state courts on the merits in the state post-conviction proceedings.  In the last reasoned decision to address that claim, the Louisiana Supreme Court denied relief, holding:  "Relator fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[14]

As the Louisiana Supreme Court correctly noted, the clearly established federal law concerning ineffective assistance of counsel claims is founded on the United States Supreme Court's decision in Strickland.  In that case, the Supreme Court established a two-prong test for evaluating ineffective assistance of counsel claims.  Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 697.  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.

---

[14] State *ex rel.* Stockman v. State, 222 So. 3d 1262 (La. 2017); State Rec., Vol. 4 of 4.

See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim on the merits unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Further, the United States

Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and*

9

> *§ 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Specifically, petitioner argues that his trial counsel was ineffective for failing to subpoena Timmarie Bourgeois to testify for the defense as an alibi witness. However, even if petitioner could show that trial counsel's performance was somehow deficient in failing to secure Ms. Bourgeois' presence at trial,[15] he clearly has not met his burden of proof to establish that he was prejudiced. As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

---

[15] That seems unlikely, in that the record shows that (1) a subpoena was in fact issued for Ms. Bourgeois to appear at trial, (2) the subpoena was served on August 7, 2013, and (3) defense counsel also requested another subpoena be issued on August 29, 2013, but the Sheriff's Office was unsuccessful in its efforts to serve that second subpoena. State Rec., Vol. 1 of 4; see also Rec. Doc. 10-1, pp. 9-12.

10

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In this case, petitioner presented no evidence, such as an affidavit from Ms. Bourgeois, demonstrating that she was available to testify at the trial and would in fact have testified in a manner beneficial to the defense. Therefore, he obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"; petitioner, who failed to produce affidavit from uncalled witness, could not establish prejudice); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D.

11

Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

For all of the foregoing reasons, it is clear that that petitioner has failed to show that the state court's decision denying his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, petitioner's claim should be denied.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Jamar Stockman be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[16]

New Orleans, Louisiana, this tenth day of May, 2018.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.